948 F.2d 229
 138 L.R.R.M. (BNA) 2747, 120 Lab.Cas. P 10,984
 BRICKLAYERS LOCAL UNION NO. 14, International Union of
Bricklayers and Allied Craftsmen, AFL-CIO; Bricklayers &
Trowel Trades' International Pension Fund; Bricklayers
Industry Advancement Fund; Bricklayers Joint Apprenticeship
Training Committee, Plaintiffs-Appellants,
v.
RUSSELL PLASTERING COMPANY; Plasterers' Local Union # 67,
Operative Plasterers and Cement Masons
International Association, AFL-CIO,
Defendants-Appellees.
 No. 90-2218.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 6, 1991.
Decided Oct. 30, 1991.
Rehearing and Rehearing En Banc
Denied Jan. 14, 1992.
 
 Sheldon M. Meizlish, Detroit, Mich. (argued and briefed), for plaintiffs-appellants.
 Gerald J. Richter, Federlein, Grylls & Keranen, Royal Oak, Mich., Frederick B. Gold (argued and briefed), Birmingham, Mich., for defendants-appellees.
 George H. Kruszewski, Rolland R. O'Hare, Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman (briefed), Detroit, Mich., for amici curiae.
 Before MARTIN and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Russell Plastering Company ("Russell"), defendant, although not a member of a contractor's association, entered into a collective bargaining agreement ("CBA") with plaintiff, Bricklayers Local Union # 14 ("Local 14"), and certain other entities comprising a Pension Fund, and "Industry Advancement Fund"[1] and an "Apprenticeship Training Committee" covering a specific work project in Washtenaw County, Michigan. The contracting association in the collective bargaining agreement established agreed work conditions with members of Local 14 in Washtenaw County. The bargaining agreement purported to relate to "employees represented by the Union."
 
 
 2
 Suit was brought for violation of the CBA under § 301 of the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). Plaintiffs claim Russell violated the CBA by not: (1) paying "the stated wages to the covered employees;" (2) complying with the "union dues check-off" provision; and (3) making "requisite fringe benefit contributions to plaintiff trust funds." Specifically, plaintiffs allege that Russell refused to "comply with the agreement insofar as concerns members of defendant Plasterers Local Union 67 [Local 67], with whom it also has a collective bargaining agreement."[2] Plaintiffs seek back wage adjustments, union dues, fringe benefit contributions from and after March, 1987, and an injunction requiring future payments. The described "geographical jurisdiction" of the Local 14 CBA for bricklayers and plasterers includes Washtenaw County and certain townships in Livingston County, Michigan. Local 67's area was the Detroit trade area (Wayne County and parts of Macomb, Monroe, and Oakland Counties). Local 67's CBA bound employers such as Russell to pay all fringe benefits provided for in the aforesaid geographic area for services performed by plasterers and masons. Russell filed a cross claim against Local 67 based on Local 14's effort "to collect certain contributions Russell has already paid to Local 67," and Russell sought indemnification on that account. Russell recognized Local 67 as the "sole Collective Bargaining Agent for all journeymen and apprentice plasterers ... on any and all work described in Article X," which referred again to the geographic area described as the Detroit trade area.
 
 
 3
 Local 14's CBA also recognized it as "the sole collective bargaining agent for the construction craft employees who are represented by the Union on ... building construction projects ... within the geographical jurisdiction of the Union (Washtenaw County)." It required also that "no later than eight days" after the effective date of the agreement that "all present employees must, as a condition of continued employment, be or become members of the Union." There was an extensive grievance and arbitration provision as to "any dispute" arising from "interpretation, application, or claimed violation of any provision of that Agreement."
 
 
 4
 At the end of Local 14's agreement, however, was a "memorandum of agreement" with "non-association contractors", such as Russell, which was not alleged to be a member of the Washtenaw Contractors Association, Inc., the party to the CBA. The non-association contractors' portion of the agreement referred to these non-members which agreed "to be bound by all terms and conditions ... and to become a party hereto." Russell further agreed, as a non-association entity, to adopt and accept "the attached agreement (Local 14 CBA) in its entirety as the basis upon which it will employ members of Local Union No. 14." (Emphasis added). Russell further agreed "to be bound by the terms of the Trust Agreement." If Russell "should willfully violate this Agreement in any way," there was provided a 48 hour notice period for correction, after which the union "will take whatever steps are necessary to compensate for violation."
 
 
 5
 Both parties moved for summary judgment, maintaining that the legal issue in controversy, involving interpretation of Local 14's CBA, should be resolved in their favor. The matter was referred to a magistrate who recommended in a lengthy report that plaintiffs' motion be denied and defendant Russell's motion be granted. Despite plaintiffs' objections thereto, the district court accepted the recommendation and entered summary judgment for Russell. The magistrate observed that "members of both unions have worked, apparently side by side, on Russell's projects, and Local 14 expressly consented to the Local 67's members' participation in Russell's construction projects in Washtenaw County."
 
 
 6
 The magistrate expressed the nub of this controversy plainly:
 
 
 7
 The substance of this dispute plainly centers on whether the collective bargaining agreement between Russell and Local 14 gives Local 14 exclusive rights to all fringe benefits earned by all workers within its territory or only over those earned by its own members. In sum, it is plaintiffs' position that fringe benefits payments are to be made to Local 14's trust funds for any employee performing work within its territory, regardless of the affiliation of the worker. Defendants' position is that fringe benefits for a particular employee are to be paid to the trust funds covering that employee, regardless of where the work was performed.
 
 
 8
 The magistrate concluded that "it would be unjust to interpret the agreement's provision relating to its geographic parameters in the manner proposed by the plaintiffs." The magistrate, then, used what he felt was a "common sense, equitable approach" to reach the result urged by defendants: "the payment of fringe benefits by the employer should correspond with the affiliation of each worker; that attributable to the work of a Local 67 member should be paid to his or her pension fund." Neither the magistrate nor the district court made any reference to that part of Local 14's agreement described as the "non-association contractors agreement." The district court had previously ruled that Local 14 had no claim because it had failed to exhaust the grievance-arbitration process of the CBA. In its brief filed on appeal, Local 14 referred to the language of Article XXIII:
 
 
 9
 If an Employer fails to pay the wages, fringes and penalties as provided in this Agreement, the Union may take whatever steps are necessary, including, but not limited to the withdrawal of man power to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding.... The delinquent Employer will be responsible for any losses incurred by the Employee, as a result of such action as well as costs of collection including but not limited to attorney fees and liquidated damages and may be required to make weekly fringe benefit payments.
 
 
 10
 We are disposed to agree with Local 14 that it was properly before the court because of the dispute over wages and fringe benefits concerning Local 67 members. We conclude that the union could, under the agreement, challenge the issue in district court.
 
 
 11
 We are of the opinion, however, that the non-association contractors' agreement language is controlling in this controversy, and that Russell, not a member of the Washtenaw contractors' association, accepted and adopted the underlying agreement only as the basis upon which it employed members of Local 14.
 
 
 12
 We reach the same conclusion, then, as did the magistrate and the district court but for different reasons. We agree with Judge Lawrence P. Zatkoff's decision in a similar case, Bricklayers Local Union # 14 v. Colosanti Corp., No. 90-CV-71906, memorandum opinion and order at 7 (E.D.Mich. Apr. 4, 1991), that "the defendant satisfied the Non-Association Contractors' Agreement and was thereby entitled to pay the wages and fringe benefits of these outside employees in accordance with their own Detroit union contract...." To the extent Russell hired members of Local 14, it was required to comply with the "terms of the Local 14 contract." The district court properly assumed jurisdiction of this contractual dispute. See International Bhd. of Boilermakers v. Olympic Plating Indus., Inc., 870 F.2d 1085, 1089 (6th Cir.1989).
 
 
 13
 We do not address the situation which would exist if there were a reciprocity agreement between Local 14 and Local 67. We decide only that judgment should be rendered for Russell (and Local 67) as to Local 14's claim for fringe benefit payments which were made to Local 67 based on wages paid to Local 67 members. We do not address the question whether Local 67 members working for Russell are required, under Local 14's CBA, to become members of Local 14 if they work on Washtenaw County projects longer than eight days, a question involved in the dues check-off claim. Finally, we do not decide the issue of disparate wages mandated by the Local 14 and Local 67 agreements during the pertinent time. We REMAND these questions and issues to the district court for its initial consideration of them on the merits, because we have determined that it was error for the district court to have dismissed Local 14's claims on procedural grounds--failure to exhaust grievance and arbitration procedures.[3]
 
 
 14
 We AFFIRM judgment for defendants on the fringe benefits aspect of plaintiff Local 14's complaint, and we AFFIRM judgment against the claims of the pension fund, the advancement fund, and the apprenticeship training committee. We REMAND for consideration on the merits by the district court the remaining Local 14 dues check-off claim and the wage differential claim.
 
 
 15
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 16
 I agree that Local 14 was not required to go through the grievance-arbitration procedures prescribed in the collective bargaining agreement, and I concur in the remand of the case to allow the district court to consider the issues not previously addressed on their merits. I would not, however, affirm the judgment of the district court on the fringe benefit issues.
 
 
 17
 The collective bargaining agreement between Local 14 and the Washtenaw Contractors Association "covers the territorial jurisdiction for bricklayers and tile setters of Trowel Trades Local 14[,] which includes all of Washtenaw County...." (Article II.) The purpose of the agreement, as the preamble recites, is "to establish the conditions under which employees represented by the union" will work for members of the association and other employers who agree to be bound by the agreement. (Emphasis supplied.) Among the obligations incurred by such employers with respect to employees "represented" by the union is an obligation to make payments to a pension fund, an apprenticeship and training fund, and something called the "Washtenaw Construction Industry Advancement Fund."
 
 
 18
 It is beyond dispute, I believe, that the universe of employees "represented" by Local 14 is not limited to employees who are members of that union. "Because 'representation' in labor law encompasses all bargaining-unit employees," Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1150 (7th Cir.1989), the contractual obligations assumed by employers who are members of the contractors association clearly extend to every employee--union member or not--in a bargaining unit that covers all of Washtenaw County.
 
 
 19
 If defendant Russell Plastering Company had been a member of the contractors association, this would have been an easy case for us to decide. Russell was never a member of the association, however, and it became a party to the collective bargaining agreement by signing a "non-association contractors agreement." This agreement, which starts out by saying that Russell "agrees to be bound by all terms and conditions set forth in the [collective bargaining agreement] and to become a party [t]hereto," states in its third paragraph that Russell "hereby adopts and accepts the [collective bargaining agreement] in its entirety as the basis upon which it will employ members of Local Union No. 14 MI." (Emphasis supplied.)
 
 
 20
 The panel majority concludes that Russell did not adopt the collective bargaining agreement as the basis upon which it would employ bricklayers who, although represented by Local 14, are not members of that local. The problem with this conclusion, in my view, is that it flies in the teeth of Russell's express agreement to be bound by "all" terms and conditions of the collective bargaining agreement "and to become a party [t]hereto." If Russell is a party to the collective bargaining agreement, and if it is bound by all of the agreement's terms, the conclusion seems inescapable that Russell is obligated to make payments to the fringe benefit funds for all bricklayers in its employ who are represented by Local 14, just as employers who belong to the contractors association are obligated to do.
 
 
 21
 The reference in the non-association contractors agreement to "members" of Local 14 is somewhat puzzling, but the drafters of the document may have assumed that because of the union shop clause in the collective bargaining agreement (see Article I, § 4), all non-members of Local 14 who work for Russell in Washtenaw County as bricklayers must become members of Local 14 "no later than eight (8) days following the first day of their employment...." In point of fact, "union shop clauses have been construed to require only payment of union dues and not union membership." Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318 (6th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985). Based on what the lawyer for Local 14 said about the union shop clause at oral argument, however, it appears that Local 14 may not have been aware that the clause would be given this construction; the lawyer told us that all workers had to become members of the local.
 
 
 22
 Be that as it may, "the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises." International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) v. Yard-Man, Inc., 716 F.2d 1476, 1480 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). The only construction that can accomplish this, I believe, is the construction suggested above; i.e., the construction that makes Russell as much a party to the collective bargaining agreement as it would have been if it had belonged to the contractors' association. Under this construction, Russell is obligated to make payments to the fringe benefit funds both for Local 14 members in its employ and for non-members it employs in the bargaining unit for which, under Article I of the collective bargaining agreement, Local 14 was recognized as "the sole collective bargaining agent...."
 
 
 
 [1]
 These other entities were potential trust fund beneficiaries of claimed contributions from Russell on wages to employees who were members of Local 67 in Washtenaw County
 
 
 [2]
 Plaintiffs concede that Russell is complying with its CBA with Local 67, but avers that "the geographic jurisdiction of Local # 67 does not extend to that of Local # 14."
 
 
 [3]
 The claims remanded are designated claims (1) and (2) at page 230 of this opinion. We have decided claim (3), the fringe benefit claim, in favor of defendants based on contract language only